UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS J. DANAHY, et al., | |
| Plaintiffs, | No. 24 CV 449 |
| v. | Judge Manish S. Shah |
| CITY OF CHICAGO, et al., | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Plaintiffs Thomas and Kimberly Danahy, Jason Black, Barbara Scott, Denise Smith and Touhy II Real Estate LLC are owners of properties that do not have a meter to measure their water usage. They sue defendants City of Chicago, City of Chicago Department of Water Billings and Collections, and the Chicago Department of Water Management for due process and equal protection violations because they are charged more for water usage than property owners who have a water meter.

The City moves to dismiss for lack of standing and for failure to state a claim upon which relief can be granted. For the reasons discussed below, the motion to dismiss for failure to state a claim is granted.

I.   **Legal Standards**

Federal Rule of Civil Procedure 12(b)(1) governs dismissals based on a lack of subject-matter jurisdiction. *See Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996); *see also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (holding that standing is a jurisdictional requirement). The

plaintiffs bear the burden of establishing jurisdiction. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003); *Apex Digital*, 572 F.3d at 443.

A complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *Id.*

## II. Facts

Plaintiffs are owners of properties in the City of Chicago. [7] ¶ 4.[1] They have been billed for water usage as unmetered accounts by the City of Chicago. [7] ¶ 4. The City charges two separate rates for property owners, one rate for properties with water meters, and one rate, a "flat fee," for properties without water meters. [7] ¶ 19. This flat fee is based on the size of the building and number of plumbing fixtures. [7] ¶¶ 5, 19. The sewer rate is billed at 100% of the water bill for each property (whether metered or unmetered). [7] ¶ 6. The unmetered rates charged by the City are between 100% and 600% higher than water and sewer charges for similar properties that are

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiffs' amended complaint, [7].

equipped with water meters. [7] ¶¶ 7, 20. The City has also implemented a Water and Sewer Tax, based on the water and sewer charges for each property, that is to be used to pay for pension costs for municipal employees. [7] ¶¶ 23–24.

The City is the only entity that can install and own water meters; property owners may not install or operate their own meters. [7] ¶ 33. Water meters are mandated by ordinance to be installed in new one-family and two-flat[2] properties but are not required in existing one-family or two-flat properties, unless "devices which require large quantities of water are installed therein or if a new water service of larger size is installed." [7] ¶¶ 34–35.

In 2022, the City put out a plan to install meters on unmetered properties, limiting the installation to specific geographic regions while there are sufficient funds to do so, with a maximum of 25,000 installations per year. [7] ¶ 38.

Plaintiffs bring this suit, on behalf of themselves and all others similarly situated, alleging violations of due process and equal protection under both the Illinois and federal constitutions. [7] ¶ 69–87.

## III. Analysis

### A. Standing

To establish standing, plaintiffs must show (1) they have suffered an "injury in fact," (2) that there is a "causal connection between the injury and the conduct complained of," and (3) that the injury will be "redressed by a favorable decision."

---

[2] Two-flat properties are two-story buildings with an apartment unit on each floor. Chris Bentley, *The Tale of the Two-Flat*, WBEZ Chicago (Aug. 20, 2014), available at https://perma.cc/VZC5-TR6Y.

3

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 597 (7th Cir. 2022). Monetary harms "readily qualify as concrete injuries." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1190 (7th Cir. 2021).

At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). The allegations of fact need only "plausibly suggest each element of standing." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020).

Here, taking the facts in the complaint as true, and all reasonable inferences in the plaintiffs' favor, the plaintiffs have standing. The plaintiffs allege they are owners of properties in the city of Chicago that are billed for water usage as unmetered accounts. [7] ¶ 4. They allege that all unmetered water accounts are charged a rate for water and sewer usage that is excessive. [7] ¶¶ 5, 19–20. These rates are 100% to 600% higher than the rates for similar properties that have meters. [7] ¶¶ 7, 20. In 2017, the City implemented a water and sewer tax calculated based on the amounts billed for water and sewer usage. [7] ¶ 23. If unmetered property owners do not pay these rates, they are charged late fees and penalties and may have their water turned off. [7] ¶ 9.

The plaintiffs have alleged that they are injured by the City's water and sewer billing practices. Although the City claims that plaintiffs have not shown they have personally been harmed, at this stage of the case, plaintiffs need only allege "general factual allegations of injury." *Lujan*, 504 U.S. at 561. The City's arguments challenge whether there is *evidence* that plaintiffs were injured, not that there is no allegation of injury. A complaint "does not need detailed factual allegations" but rather "enough fact to raise a reasonable expectation that discovery will reveal evidence of [a necessary element]." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). What matters is not the details of the injury, but "whether the allegations support a plausible inference that [each plaintiff] suffered a concrete detriment." *Bazile*, 983 F.3d at 281. Here, plaintiffs have alleged they have been billed by the City as unmetered properties, and the rate set by the City causes unmetered properties to be billed for far more than similar properties that have a meter. The inference in favor of the plaintiffs is that they were billed for water and sewer, as unmetered property owners, at a rate far more than metered properties. This is a monetary harm, particularized to the plaintiffs as nonmetered property owners. At the motion to dismiss stage, this is sufficient to show the plaintiffs have an actual case or controversy for the court to decide. The motion to dismiss for lack of standing is denied.

**B.     Merits**

*1.     Substantive Due Process*

The Fourteenth Amendment protects people from state deprivation of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. To state a substantive due process claim, a plaintiff must allege a deprivation of a "protected life, liberty or property interest." *Indiana Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 699 (7th Cir. 2024). "'[T]he scope of substantive due process is very limited' and courts are 'reluctant to expand the concept.'" *Robbin v. City of Berwyn*, 108 F.4th 586, 589 (7th Cir. 2024) (quoting *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019)). Unless the challenged governmental practice has encroached on a fundamental right, "substantive due process requires only that the practice be rationally related to a legitimate governmental interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Indiana Land Tr. #3082*, 107 F.4th at 699 (quoting *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008)). Here, all parties agree that rational basis review applies.

Under rational basis review "a state law is constitutional even if it is 'unwise, improvident, or out of harmony with a particular school of thought.'" *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013) (quoting *Eby-Brown Co., LLC v. Wisc. Dep't of Agric.*, 295 F.3d 749, 754 (7th Cir. 2002)). It is irrelevant whether the reasons given actually motivated the legislature; the only question is whether some rational basis exists on which the legislature *could* have based the law.

*Id.* The plaintiffs have the burden to "negate every conceivable basis which might support it." *Id.* (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).

I must "take as true all of the complaint's allegations and reasonable inferences that follow," then "apply the resulting 'facts' in light of the deferential rational basis standard." *Flying J. Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)). To survive a Rule 12(b)(6) motion to dismiss, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.* (quoting *Wroblewski*, 965 F.2d at 460).

The plaintiffs allege that the City uses an arbitrary and irrational rate schedule for charging unmetered properties for water usage. This also makes the sewer usage rates arbitrary and irrational, they argue, as sewer rates are billed at 100% of the water rate. Finally, they allege that the Water and Sewer Tax imposed based on these arbitrary and irrational rates is itself arbitrary and irrational and that the tax is not reasonably connected to water usage.

Here, the City has put forth multiple plausible reasons for how the water usage rates are rationally related to a legitimate government interest. First, the City has set these rates to cover the costs of providing water services, servicing bond obligations, and maintaining proper reserves. MCC § 11-12-260. Because it is impossible to measure the individual usage of water on each property without meters, the City had to come up with a formula to charge unmetered properties. The formula starts with the size of a building. MCC § 11-12-270. Additional fees may be added for

7

outbuildings, air conditioning, hoses, gardens that are irrigated, or special water fixtures. MCC §§ 11-12-270, 11-12-280. For one-family homes, the formula is the size of the front width of the building, plus additional fees for each story above one story, and any additional fees as set in § 11-12-280. For flats or apartment buildings, the formula is the size of the front of the building for service to one flat, and additional fees for each other flat in the building with at least one toilet, one bath, and one sink and for additional water closets. MCC § 11-12-270. Additional fees for outbuildings, air conditioning, and hoses are also included. The size of a building, number of flats or apartments, and number and type of additional water fixtures are all rationally related to determining how much water a given building likely uses. The rates assigned for each factor are based on a review of the revenues and expenditures of the City's water system from the year before and must cover the costs of operating and maintaining the water system and servicing bond obligations. MCC § 11-12-260. The rates are rationally related to recouping costs for water usage, and the plaintiffs have not alleged facts that overcome the presumption of rationality.

The City has made higher rates for unmetered properties to cover any undiscovered potential leaks or other forms of excessive consumption. The City does not need to prove that there *are* leaks. *Nelson v. Town of Paris*, 78 F.4th 389, 400 (7th Cir. 2023) (quoting *Beach Commc'ns*, 508 U.S. at 315) ("[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."). The higher fees for unmetered housing are rationally related to a legitimate interest in the City ensuring the costs of

8

overconsumption by unmetered properties is covered. The City has shown that the water usage rates for unmetered houses are rationally related to water usage, and to ensure that the City recoups the costs of providing water service. The plaintiffs have failed to state a claim upon which relief can be granted.

The sewer rates are tied one-to-one with the water rates. This is rational because, as the City notes, "what goes in must come out." It makes sense that water brought into the house will leave the house through the sewers, and so tying the sewer rates to the water rates is not irrational or arbitrary. Moreover, the sewer rates are used for the "operation, maintenance, and rehabilitation or reconstruction" of the City's sewer system. MCC § 3-12-010. The City approximates the usage of sewers by using the estimated usage of water. The rates are rationally related to the City's interest in operating and maintaining the sewer system, and the plaintiffs have not alleged facts to undermine the rational basis for the sewer rates.

Finally, the plaintiffs argue the City's Water and Sewer Tax is arbitrary because it funds the City's municipal pensions, which are unrelated to the use of water and sewer services. "[T]he Constitution grants legislators, not courts, broad authority (within the bounds of rationality) to decide whom they wish to help with their tax laws and how much help those laws ought to provide." *Fitzgerald v. Racing Ass'n of Cent. Iowa*, 539 U.S. 103, 108 (2003). "Taxes, whether on liquor or on running red lights, are valid municipal endeavors." *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009). When a tax is imposed, "the taxpayers and the recipients of the tax revenues needn't be the same." *Empress Casino Joliet Corp. v. Balmoral Racing Club,*

9

*Inc.*, 651 F.3d 722, 730 (7th Cir. 2011); *see also Carmichael v. S. Coal & Coke Co.*, 301 U.S. 495, 523 (1937) ("This Court has repudiated the suggestion, whenever made, that the Constitution requires the benefits derived from the expenditure of public moneys to be apportioned to the burdens of the taxpayer, or that he can resist the payment of the tax because it is not expended for purposes which are peculiarly beneficial to him."). The tax is implemented to produce revenue to pay for municipal pensions, which is a legitimate state interest. The plaintiffs cite no authority for the argument that the use of funds collected from a tax may only go to a related benefit, or else it is arbitrary. The tax is rationally related to a legitimate state interest in raising revenue. It does not violate due process to impose this tax.

Because there is a rational basis for the water and sewer rates, and for the Water and Sewer tax, and because the plaintiffs' alleged facts do not overcome the presumption of rationality that applies here, plaintiffs have failed to state a claim upon which relief can be granted. Their substantive due process claims are dismissed without prejudice.[3]

### 2. Procedural Due Process

The parties have briefly touched on whether plaintiffs have raised a procedural due process claim, and whether the City has moved to dismiss any due process claim.

---

[3] Illinois courts "generally analyze federal and state due process claims using the same standards unless good cause exists to interpret them differently." *Dotty's Café v. Illinois Gaming Bd.*, 2019 IL App (1st) 173207, ¶ 29 (1st Dist. 2019). Plaintiffs have made no arguments that the Illinois due process clause extends further than the federal due process clause in this case.

In support of their assertion that they raised a procedural due process claim, the plaintiffs cite to paragraph 9 of their amended complaint, which reads:

> Because there is no alternative water source, and because Defendants charge exorbitant late fees and penalties and turn off the water supply if bills are unpaid, unmetered property owners in the City of Chicago have had no recourse other than either to pay the excessive water and sewer bills or, when they cannot pay the enormous charges – to accumulate an ever-increasing debt to the water department that is made worse through the continuous assessment of interest and penalties. [7] ¶ 9.

This does not state a procedural due process claim. To plead a procedural due process violation, plaintiffs must allege the "deprivation of a protected interest" and "insufficient procedural protections surrounding that deprivation." *Martin v. Haling*, 94 F.4th 667, 671 (7th Cir. 2024). Plaintiffs allege neither element. Plaintiffs do not allege they were denied water service or a water meter, that those interests were "protected," or that there were insufficient procedures to address any deprivation. The complaint does not allege any element of a procedural due process claim. To the extent that the plaintiffs claim there is a procedural due process claim in the complaint, the City's motion to dismiss for failure to state a procedural due process claim is granted.

### 3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that the government may not "deny to any person…the equal protection of the laws." U.S. Const. Amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub.*

11

*Sch. Dist.*, 919 F.3d 1003, 1008 (7th Cir. 2019) (internal quotations omitted). "Local governing bodies…can be sued directly under § 1983…where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs. of City of New York,* 436 U.S. 658, 690 (1978). To state a claim against the City for an equal protection violation, the plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice of intentional discrimination." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotations omitted).

"Equal-protection claims start with the question: treated differently than whom?" *St. Joan Antida*, 919 F.3d at 1010. Unless the differential treatment is based on a protected characteristic, rational basis review applies. *K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 121 F.4th 604, 615–16 (7th Cir. 2024). "The rational-basis analysis is essentially the same whether under the Equal Protection Clause or substantive due process." *Id.* at 623. "In cases involving economic and social regulation, so long as distinctions are conceivably rational, the recourse of a disadvantaged entity lies in the democratic process." *Lamers Dairy Inc. v. U.S. Dep't of Agric.*, 379 F.3d 466, 476 (7th Cir. 2004). "A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *City of Chicago v. Shalala*, 189 F.3d 598, 606 (7th Cir. 1999) (quoting *Beach Commc'ns*, 508 U.S. at 321). Only where there is "invidious

12

discrimination" or a "wholly arbitrary act" may a local economic regulation be struck down pursuant to the Equal Protection Clause. *Goodpaster*, 736 F.3d at 1071.

Like with plaintiffs' due process claims, the City has set forth a rational basis for the differential treatment between the unmetered and metered property owners for water meter rates: unlike with metered properties, the City has no way to measure how much water is used by unmetered properties. The City had to come up with some formula to determine how much unmetered properties owe, and that formula must split the costs of water and sewer service between unmetered properties to cover the costs of water and sewer use by unmetered properties. That there is inequality between the metered properties and unmetered properties does not mean the City's formula fails rational basis review. *Shalala*, 189 F.3d at 606.

The plaintiffs cite *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty.*, 488 U.S. 336 (1989) in support of their argument that when a state actor targets certain property owners with a discriminatory tax policy, it violates the Equal Protection Clause. In that case, the petitioners' real property was assessed based on the property's recent purchase price. *Id.* at 338. For land that had not been recently sold, the land was assessed at the declared consideration at which the property was last sold with only minor modifications each year. *Id.* For nearly a decade, the petitioners sought relief before the County Commission of Webster County, arguing the assessment policy resulted in systematic excessive appraisals of their properties. *Id.* at 339. The County Commission affirmed the appraisals each year. *Id.* The Supreme Court held that the "relative undervaluation of comparable property in

13

Webster County over time" violated the Equal Protection Clause. *Id.* at 346. It explained that the Equal Protection Clause applies to persons or property of the same class. *Id.* at 343. It also clarified that a government "may divide different kinds of property into classes and assign to each class a different tax burden so long as those divisions and burdens are reasonable." *Id.* at 344. As long as the "selection or classification is neither capricious or arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law." *Id.* (quoting *Brown-Forman Co. v. Kentucky*, 217 U.S. 563, 573 (1910)). The problem was that the West Virginia Constitution and laws provided "that all property of the kind held by petitioners shall be taxed at a rate uniform throughout the State according to its estimated market value." *Id.* at 345.

Here, on the other hand, the City divided properties into classes: metered and unmetered, and assigned each a different fee burden. The difference in the classes is based on the ability to measure the water used—the metered properties' water use can be measured; the unmetered properties' water use cannot. The City has a rational basis for treating unmetered properties differently than metered properties.

As for the sewer rates and Water and Sewer Tax, the plaintiffs have not shown that they are treated differently from metered property owners; the sewer rates and Water and Sewer Tax are tied to water costs—the sewer rate is equal to the water rate, MCC § 3-12-020(a), and both metered and unmetered property owners are taxed at the same rate under the Water and Sewer Tax. MCC § 3-80-040. Because metered and unmetered property owners are treated the same in calculating sewer costs and

14


Water and Sewer Tax rates, the complaint fails to allege an Equal Protection Clause violation.[4]

### IV. Conclusion

The City's motion to dismiss, [17], is granted. The complaint is dismissed without prejudice.[5] Plaintiffs have leave to file an amended complaint by April 23, 2025. If no amended complaint is filed, the dismissal will convert to a dismissal with prejudice for failure to state a claim and the clerk will enter judgment.

ENTER:

Manish S. Shah
United States District Judge

Date: March 26, 2025

---

[4] Like the Due Process Clause, Illinois courts interpret its Equal Protection Clause differently from the federal Equal Protection Clause "only if there is good cause for doing so." *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 92 (2013). The plaintiffs point to no constitutional debate or record, or Illinois state history or custom "which would suggest that a different meaning should attach." *Id.*

[5] Plaintiffs amended their complaint once, but this is the first motion to dismiss challenging the sufficiency of their allegations. "Dismissal without prejudice is the norm, at least when it comes to the plaintiff's original complaint." *White v. Illinois State Police*, 15 F.4th 801, 808 (7th Cir. 2021).