UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS J. DANAHY, et al., | |
| Plaintiffs, | No. 24 CV 449 |
| v. | Judge Manish S. Shah |
| CITY OF CHICAGO, et al., | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Plaintiffs Thomas and Kimberly Danahy, Jason Black, Barbara Scott, Denise Smith and Touhy II Real Estate LLC are owners of properties that do not have a meter to measure their water usage. They sue defendants City of Chicago, City of Chicago Department of Water Billings and Collections, and the Chicago Department of Water Management for due process and equal protection violations because they are charged more for water usage than property owners who have a water meter.

The City moves to dismiss the plaintiffs' second amended complaint for failure to state a claim upon which relief can be granted. For the reasons discussed below, the motion is granted.

I. Legal Standards

Federal Rule of Civil Procedure 12(b)(1) governs dismissals based on a lack of subject-matter jurisdiction. *See Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996); *see also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (holding that standing is a jurisdictional requirement). The

plaintiffs bear the burden of establishing jurisdiction. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003); *Apex Digital*, 572 F.3d at 443.

A complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *Id.*

**II.    Facts**

Plaintiffs are owners of properties in the City of Chicago. [31] ¶ 4.[1] They have been billed for water usage as unmetered accounts by the City of Chicago. [31] ¶ 4. The City charges two rates for property owners, one rate for properties with water meters, and one rate, a "flat fee," for properties without water meters. [31] ¶¶ 3, 19. This flat fee is based on the size of the building and number of plumbing fixtures. [31] ¶¶ 5, 19. A sewer rate is billed at 100% of the water bill for each property (whether metered or unmetered). [31] ¶ 6. The unmetered rates charged by the City are

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiffs' second amended complaint, [31]. In an earlier opinion, I dismissed plaintiffs' first amended complaint. [29]; *Danahy v. City of Chicago*, No. 24 CV 449, 2025 WL 918557, at *7 (N.D. Ill. Mar. 26, 2025). The facts in the second amended complaint are largely the same, as is the discussion here of how those facts apply to plaintiffs' legal theories.

between 100% and 600% higher than water and sewer charges for similar properties that are equipped with water meters. [31] ¶¶ 7, 20. The City has also implemented a Water and Sewer Tax, based on the water and sewer charges for each property, that is to be used to pay for pension costs for municipal employees. [31] ¶¶ 23–24.

The City is the only entity that can install and own water meters; property owners may not install or operate their own meters. [31] ¶ 33. Water meters are mandated by ordinance to be installed in new one-family and two-flat properties but are not required in existing one-family or two-flat properties, unless "devices which require large quantities of water are installed therein or if a new water service of larger size is installed." [31] ¶¶ 34–35.

In 2022, the City put out a plan to install meters on unmetered properties, limiting the installation to specific geographic regions while there are sufficient funds to do so, with a maximum of 25,000 installations per year. [31] ¶ 38.

A "significant majority" of Black, Hispanic, and Asian residents in Chicago have nonmetered accounts. [31] ¶ 50. The higher unmetered water rates therefore disproportionately affect Black, Hispanic, and Asian Chicagoans. [31] ¶¶ 53–54, 66.

Plaintiffs bring this suit, on behalf of themselves and all others similarly situated, alleging violations of due process and equal protection under both the Illinois and federal constitutions. [31] ¶ 71–111.

### III. Analysis

#### A. Standing

The City argues that the plaintiffs lack standing to bring an equal protection claim because they fail to allege that they are a part of the group that has allegedly suffered discrimination. Article III of the Constitution requires a "personal stake" in the outcome of the suit "sufficient to engage the jurisdiction of the federal court." *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 734 (7th Cir. 2023). To establish standing, plaintiffs must show (1) they suffered a concrete, particularized, and actual or imminent injury-in-fact; (2) the injury was likely caused by the City; and (3) the injury would likely be redressed by judicial relief. *Id.* The standing doctrine also imposes limits on the exercise of federal jurisdiction in certain circumstances, like the general bars on raising another's legal rights, adjudication of generalized grievances, and complaints that fall outside the "zone of interests protected by the law invoked." *O'Sullivan v. City of Chicago*, 396 F.3d 843, 853 (7th Cir. 2005) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). These are the prudential considerations of standing which are not jurisdictional and may be disregarded in certain situations or waived. *Dunnet Bay Const. v. Borggren*, 799 F.3d 676, 689 (7th. Cir. 2015). "At its constitutional core, therefore, standing requires that the parties must allege injury fairly traceable to the alleged illegal conduct of the defendant that the court may redress." *O'Sullivan*, 396 F.3d at 857.

Generally, prudential limits on standing prevent plaintiffs not part of a protected class from suing to vindicate the rights of minorities who have suffered from

4

racial discrimination. *See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1055 (9th Cir. 2002). But where a plaintiff "endured an individualized harm related to racial classification," he has alleged injury sufficient to support standing, even if he is not part of the protected class. *See O'Sullivan*, 396 F.3d at 855–56 (quoting *United States v. Hays*, 515 U.S. 737, 744–45 (1995)); *Pavarti Corp. v. City of Oak Forest*, 709 F.3d 678, 681 (7th Cir. 2013) ("But a company can complain about financial harm caused it by racial discrimination against potential customers."); *RK Ventures*, 307 F.3d at 1055 ("But plaintiffs who are not members of the protected class have standing to challenge racially discriminatory conduct in their own right when they are the direct target of the discrimination.").

Plaintiffs allege that the City charges unmetered property owners, the majority of whom are Black, Hispanic, and Asian, more for the same water service as metered properties. [31] ¶¶ 50, 53, 93–94, 100–01, 103. They allege this policy has a "discriminatory impact" on Black, Hispanic, and Asian Chicagoans. [31] ¶ 53. They also allege that they are unmetered property owners who have been charged more for water service than metered property owners. [31] ¶ 4. Plaintiffs have at this stage adequately pleaded facts that show that they have suffered an injury due to an alleged policy that discriminates against racial minority groups. Their alleged injury—greater water bills—is directly traceable to the City's alleged discriminatory policy. And judicial action addressing the policy of charging more for unmetered properties will redress their injury. The plaintiffs have established constitutional standing.

Prudential standing considerations also support standing. Plaintiffs have alleged personal injury tied to the policy—they are charged up to 600% more for similar water service to metered properties. [31] ¶ 20. Even though the plaintiffs have not themselves alleged they are part of the protected class, they have been financially harmed by the City's alleged racial discrimination. *See Pavarti Corp.*, 709 F.3d at 681. At this stage, this is enough to confer standing.

### B. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that the government may not "deny to any person … the equal protection of the laws." U.S. Const. Amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1008 (7th Cir. 2019) (internal citation and quotations omitted). "Local governing bodies … can be sued directly under § 1983 … where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs. of City of New York,* 436 U.S. 658, 690 (1978).

To state a claim against the City for an equal protection violation, the plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice of intentional discrimination." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal citation and quotation marks omitted).

6

"Equal-protection claims start with the question: treated differently than whom?" *St. Joan Antida*, 919 F.3d at 1010. Unless the differential treatment is based on a protected characteristic, rational basis review applies. *K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 121 F.4th 604, 615–16 (7th Cir. 2024).

   1.   *Based on race*

Plaintiffs allege that the City has violated their right to equal protection of the laws based on race. The City argues that the plaintiffs have failed to state an equal protection claim based on race because they allege only that the City's policy disparately impacts racial minorities, and do not allege intentional discrimination.

The Equal Protection Clause of the Fourteenth Amendment prohibits intentional racial discrimination. *Williams v. Dart*, 967 F.3d 625, 637 (7th Cir. 2020). To state an equal protection claim, a plaintiff "must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group." *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 261–62 (7th Cir. 1999). A law that is neutral on its face "warrants strict scrutiny only if it can be proved that the law was motivated by a racial purpose or object, or if it is unexplainable on grounds other than race." *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999) (internal citation and quotation marks omitted).

Plaintiffs allege that the policies, while facially neutral, "disproportionately impact" protected classes of Chicagoans. [31] ¶¶ 53, 66, 93–95, 100–101. This is not enough to state a claim under the Equal Protection Clause. Disparate impact alone does not make a policy unconstitutional. *Vill. of Arlington Heights v. Metro Hous. Dev.*

7

*Corp.*, 429 U.S. 252, 264–65 (1977). "[S]imple knowledge that a particular outcome is the likely consequence of an action" is not enough; "discriminatory purpose requires a defendant to have selected 'a particular course of action at least in part "because of" … its adverse effects upon an identifiable group.'" *Alston v. City of Madison*, 853 F.3d 901, 907 (7th Cir. 2017) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 645 (7th Cir. 2001)).

The plaintiffs cite *Gautreaux v. City of Chicago*, 480 F.2d 210 (7th Cir. 1973) and *Goldstein v. City of Chicago*, 504 F.2d 989 (7th Cir. 1971) for the proposition that intent is not necessary, and that disparate impact is enough to allege an equal protection claim based on race. But those cases predate *Village of Arlington Heights* and *Washinton v. Davis*, 426 U.S. 229, 244–45 (1976). Both cases held that disparate impact is not enough to allege an equal protection violation. Indeed, the *Washington* Court specifically disapproved of *Hawkins v. Town of Shaw*, 437 F.2d 1286 (5th Cir. 1971), *aff'd on rehearing en banc*, 461 F.2d 1171 (1972), the cases that *Gautreaux* and *Goldstein* relied on. 426 U.S. at 244–45 and 244 n.12. Disparate impact is not enough; a plaintiff must allege discriminatory intent.

Plaintiffs do not allege in their complaint that the City has intentionally discriminated against Black, Hispanic, or Asian Chicagoans in its water policy. Instead, plaintiffs allege only that there is a disparate impact on those groups and that the City "knew or should have known" the fees and taxes were excessive and not justified by any legitimate purpose. But knowledge of the consequences of an action is inadequate to show intent. *Alston*, 853 F.3d at 907. Because the plaintiffs have

8

failed to allege that the policy was intentionally discriminatory, they do not state a claim for an equal protection violation based on race.

### 2. *Based on a fundamental right to water service*

Plaintiffs also allege that the City's water policies violate equal protection under the law because the policies infringe on their "fundamental right" to water access. [31] ¶¶ 43–48, 97, 103. There is no fundamental right to water service. *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009); *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 567 (7th Cir. 1991). Because there is no fundamental right to water service, and there is no plausible equal protection claim based on race, plaintiffs' equal protection claims are analyzed under the rational basis standard.

### 3. *Rational basis*

Under rational basis review, if "'any reasonably conceivable state of facts … could provide a rational basis for the classification,' the challenged law is constitutional." *K.C.*, 121 F.4th at 621 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). "A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *City of Chicago v. Shalala*, 189 F.3d 598, 606 (7th Cir. 1999) (quoting *Beach Commc'ns*, 508 U.S. at 321). Only where there is "invidious discrimination" or a "wholly arbitrary act" may a local economic regulation be struck down pursuant to the Equal Protection Clause. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013).

I must "take as true all of the complaint's allegations and reasonable inferences that follow," then "apply the resulting 'facts' in light of the deferential rational basis standard." *Flying J. Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)). To survive a Rule 12(b)(6) motion to dismiss, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.* (quoting *Wroblewski*, 965 F.2d at 460).

Plaintiffs argue that the City's water policies violate equal protection because there is no rational basis for charging unmetered accounts substantially more than metered accounts. As explained in my prior opinion, the City has put forth multiple plausible reasons for how the water usage rates are rationally related to a legitimate government interest: that the rates cover the cost of providing water services, servicing bond obligations, and maintaining proper reserves; that because it is impossible to measure individual water usage, there had to be some formula, and the formula is based on factors reasonably related to how much water a particular building may use; and the rates assigned for each factor are made to cover the operating costs of the water system. [29] 7–8. The City's reason for making higher rates for unmetered properties is to cover undiscovered potential leaks or other forms of excessive consumption. [29] at 8–9. The City has shown that the water usage rates for unmetered houses are rationally related to water usage, and to ensure that the City recoups the costs of providing water service.

10

Similarly, I previously found a rational basis for the sewer rates that are tied one-to-one with the water rates: it makes sense that water brought into the house will leave the house through the sewers, and so tying the sewer rates to the water rates is not irrational or arbitrary. [29] at 9. Finally, because taxes are "valid municipal endeavors," and the Water and Sewer tax is implemented to produce revenue to pay for a legitimate state interest (municipal pensions), the tax is rational. [29] at 9–10 (quoting *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009)).

Plaintiffs argue that the City's explained rational basis is not true, and that the rates are not based on water usage but the City's need to pay for bills unrelated to a customer's water usage. They cite no allegations in the complaint to that effect. They say that "proof" of the correlation is that unmetered customers' bills fluctuate each quarter, but no allegations in the complaint support this argument. Even taking the facts in the plaintiffs' favor, there are no facts sufficient to overcome the presumption of rationality.

Plaintiffs also argue that the City violated Illinois common law by imposing significantly higher taxes and water fees on unmetered accounts than it does on metered accounts. The violation of Illinois common law, according to plaintiffs, is enough to state a claim for an equal protection violation under *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty.*, 488 U.S. 336 (1989).

In *Allegheny*, the petitioners' real property was assessed based on the property's recent purchase price. *Id.* at 338. For land that had not been recently sold, the land was assessed at the declared consideration at which the property was last

11

sold with only minor modifications each year. *Id.* The petitioners argued that the assessment policy resulted in systematic excessive appraisals of their properties compared with properties that had not been recently sold. *Id.* at 339. The Supreme Court held that the "relative undervaluation of comparable property in Webster County over time" violated the Equal Protection Clause. *Id.* at 346. Because the West Virginia Constitution and laws provided "that all property of the kind held by petitioners shall be taxed at a rate uniform throughout the State according to its estimated market value," the "gross disparities in the assessed value of generally comparable property" denied petitioners equal protection of the laws. *Id.* at 338, 345.

In Illinois, a "municipality operating a public utility has a common law duty not to act in an unreasonably discriminatory manner." *Keeven v. City of Highland*, 294 Ill.App.3d 345, 347 (5th Dist. 1998). At common law, "such an enterprise, because it had a monopoly on the service provided in the area, was prohibited from charging exorbitant rates and was required to serve all of its consumers without unreasonable discrimination in rates or manner of service." *Austin View Civic Ass'n v. City of Palos Heights*, 85 Ill.App.3d 89, 94–95 (1st Dist. 1980). Plaintiffs "can assert that defendant violated their common law right prohibiting unreasonable discrimination in water rates." *Id.* at 95. This right is separate and apart from the constitutional right to equal protection of the law. *Id.* at 95–96.

Plaintiffs do not allege in their complaint a violation of the Illinois common law. Instead, they argue in their response that the violation of the common law provides a basis for their equal protection claim. But even if the rates are

12

disproportionate in violation of the Illinois common law right, it does not provide a basis for an equal protection claim. "[A] mere violation of state law does not bootstrap itself into a violation of the Equal Protection Clause." *St. Joan Antida*, 919 F.3d at 1014.

The holding in *Allegheny* has been limited to rare situations where a "*clear* state law requirement" was "*clearly and dramatically* violated." *Id.* at 1013 (quoting *Armour v. City of Indianapolis*, 566 U.S. 673, 687 (2012)) (emphasis in original). The common law's reasonableness requirement is not "clear" nor was it "clearly and dramatically violated." *See id.* at 1014 (Wisconsin statute requiring "reasonable uniformity" in transportation provided for students was ambiguous, and absent clear law, could not be "clearly and dramatically violated"). To determine whether a difference in water rates is reasonable under Illinois common law, courts must consider multiple factors like the amount of product used, the time when used, or "any other relevant factors reflecting a difference in costs." *Keeven*, 294 Ill.App.3d at 347. This fact-heavy analysis often includes experts and comparisons of factors used by other communities in establishing water rates. *Id.* at 348–49. With such an inquiry, this case is not the "'rare case where the facts preclude[]' any alternative reading of the state law and thus any alternative rational basis." *Armour*, 566 U.S. at 687 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 16 (1992)). It is possible that the water rate differences violate Illinois common law, but that question "is not before [me], and the answer, unsettled as it is, should come from the [Illinois] courts." *St. Joan Antida*, 919 F.3d at 1014.

13

The City has offered a rational basis that is plausible notwithstanding Illinois common law. *Id.* Plaintiff's equal protection claims are dismissed.[2]

### C. Substantive Due Process

Plaintiffs also allege violations of substantive due process. The Fourteenth Amendment protects people from state deprivation of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. To state a substantive due process claim, a plaintiff must allege a deprivation of a "protected life, liberty or property interest." *Indiana Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 699 (7th Cir. 2024). "'[T]he scope of substantive due process is very limited' and courts are 'reluctant to expand the concept.'" *Robbin v. City of Berwyn*, 108 F.4th 586, 589 (7th Cir. 2024) (quoting *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019)). Unless the challenged governmental practice has encroached on a fundamental right, "substantive due process requires only that the practice be rationally related to a legitimate governmental interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Indiana Land Tr. #3082*, 107 F.4th at 699 (quoting *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008)). In their second amended complaint, plaintiffs allege that a

---

[2] Plaintiffs allege an equal protection claim based on the Illinois Constitution but make no arguments about it. Illinois courts interpret its Equal Protection Clause differently from the federal Equal Protection Clause "only if there is good cause for doing so." *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 92 (2013). The plaintiffs point to no constitutional debate or record, or Illinois state history or custom "which would suggest that a different meaning should attach." *Id.* For the same reasons their federal equal protection claims are dismissed with prejudice, so are their Illinois equal protection claims.

14

"fundamental right" is implicated: their right to water service. [31] ¶¶ 43–48, 86. The City argues that rational basis review governs.

As explained, there is no fundamental right to water service. *Srail*, 588 F.3d at 943; *Magnuson*, 933 F.2d 567. Because there is no fundamental right implicated, I review the plaintiffs' claims for a rational basis. "The rational-basis analysis is essentially the same whether under the Equal Protection Clause or substantive due process." *K.C.*, 121 F.4th at 623.

The plaintiffs allege that the City uses an arbitrary and irrational rate schedule for charging unmetered properties for water usage. This also makes the sewer usage rates arbitrary and irrational, they argue, as sewer rates are billed at 100% of the water rate. Finally, they allege that the Water and Sewer Tax imposed based on these arbitrary and irrational rates is itself arbitrary and irrational and that the tax is not reasonably connected to water usage.

The plaintiffs make the same exact arguments for substantive due process under rational basis review that they did in their response to the City's first motion to dismiss their first amended complaint, and do not address my prior ruling on their arguments. [29] at 6–10. No new facts were added in the Plaintiffs' second amended complaint that change my analysis.

As with the rational basis analysis for plaintiffs' equal protections claim, because there is a rational basis for the water and sewer rates, and for the Water and Sewer tax, and because the plaintiffs' alleged facts do not overcome the presumption

15

of rationality that applies, plaintiffs have failed to state a claim upon which relief can be granted. Their substantive due process claims are dismissed.[3]

### D.    Procedural Due Process

Once again, the parties have only briefly touched on whether plaintiffs have raised a procedural due process claim, and whether the City has moved to dismiss any due process claim—again, the plaintiffs have copied the same argument they raised in their response to the City's first motion to dismiss. Plaintiffs have added allegations to their complaint, however, that the City of Chicago "denies water service – and has cut off access to water – to Plaintiffs due to the non-payment of the City's excessive non-metered charges." [31] ¶¶ 87, 98. The plaintiffs allege that water service is a "fundamental right." [31] ¶¶ 86, 97.

To state a procedural due process claim, plaintiffs must allege that they have been denied a protected interest in property or liberty and that the state has "insufficient procedural protections surrounding that deprivation." *Martin v. Haling*, 94 F.4th 667, 671 (7th Cir. 2024); *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773 (7th Cir. 2021). "Property interests do not originate in the Constitution," but are "'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Rock River*, 14 F.4th at 773

---

[3] Like their equal protection claims, Plaintiffs make no arguments based on the Illinois Constitution. Like equal protection claims, Illinois courts "generally analyze federal and state due process claims using the same standards unless good cause exists to interpret them differently." *Dotty's Café v. Illinois Gaming Bd.*, 2019 IL App (1st) 173207, ¶ 29 (1st Dist. 2019). Plaintiffs have made no arguments that the Illinois due process clause extends further than the federal due process clause in this case. Because they are analyzed the same way, any Illinois due process claims are dismissed with prejudice.

16

(quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Plaintiffs have not alleged that water service is a protected property interest under any Illinois state law. Illinois delegates to municipalities the right to own and operate water utilities. 65 ILCS 5/11-125-1. Pursuant to its delegated authority, the City enacted in its municipal code water regulations, which requires a permit to be granted before water service will be provided. There is thus no absolute entitlement to water service in Chicago. Chi. Mun. Code Art. I, § 11-12-010, et seq. *See also Stevo v. Frasor*, 2011 WL 253963, at *6 (N.D. Ill. Jan. 3, 2011), *aff'd*, 662 F.3d 880 (7th Cir. 2011). Instead, plaintiffs' right to water service was contractual. *See Mack Indus., Ltd. v. Vill. of Dolton*, 2015 IL App (1st) 133620, ¶ 30 (relationship between municipality's water service and its inhabitants is "essentially one of contract"). To enforce contractual rights, the plaintiffs must fulfill their end of the bargain. *See Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 520 (7th Cir. 2025). Plaintiffs have alleged that water was shut off due to non-payment. [31] ¶¶ 48–49, 87. Because they did not fulfill their end of the bargain—paying for the services they use—they cannot say they were deprived a protected interest.

Plaintiffs also failed to allege "insufficient procedural protections surrounding that deprivation." *Martin*, 94 F.4th at 671. [29] at 10–11. Plaintiffs do not allege that there were insufficient procedures to address any deprivation. To the extent that there is a procedural due process claim in the complaint, the City's motion to dismiss for failure to state a procedural due process claim is granted.

17

## IV. Conclusion

The City's motion to dismiss, [37], is granted. The complaint is dismissed with prejudice.[4] Enter judgment and terminate civil case.

ENTER:

                                                             Manish S. Shah
                                                             United States District Judge

Date: October 22, 2025

---

[4] After a party has amended its pleading once by right, it may amend a pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "Where a plaintiff repeatedly fails to cure deficiencies," I have "'broad discretion' to deny leave to amend." *Lewis v. AbbVie Inc.*, 152 F.4th 807, 816 (7th Cir. 2025) (quoting *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 520 (7th Cir. 2024)). This is plaintiffs' second amended complaint. Despite having their claims dismissed, the plaintiffs failed to address the deficiencies from their first amended complaint in their second amended complaint. And much of plaintiffs' response brief was simply copied and pasted from their previous brief without addressing the previous opinion, where I had already ruled on those issues. Because the plaintiffs failed to cure the deficiencies in their first amended complaint and failed to "offer any meaningful indication of how [they] would plead differently," I dismiss the complaint with prejudice. *Id.* (quoting *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012)).